UNITED STATES DISTRICT COURT
EASTERN DISTRICT
----------------------------------------------------------------X
PHOENIX ENTERTAINMENT
PARTNERS, LLC,

               Plaintiff,

   - against -

PARTYOKEE ENTERTAINMENT, LLC,
d/b/a THE PARTYOKEE GUYS,

               Defendant.
----------------------------------------------------------------X

Case No.

# CV 15 - 3243

**COMPLAINT**

**JURY TRIAL DEMANDED**

HURLEY, J

LINDSAY,

        Plaintiff, Phoenix Entertainment Partners, LLC, by its undersigned counsel, complains against Partyokee Entertainment, LLC, d/b/a the Partyokee Guys and alleges as follows:

## JURISDICTION AND VENUE

        1.    This is an action for trademark infringement and unfair competition arising under 15 U.S.C. §§ 1114 and 1125. This Court has exclusive jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the laws of the United States.

        2.    This Court further has jurisdiction pursuant to 28 U.S.C § 1338(a), in that this civil action arises under an Act of Congress relating to trademarks, and, as to Plaintiff's Lanham Act unfair competition claim, pursuant to 28 U.S.C. § 1338(b), in that the claim is joined with a substantial and related claim under the trademark laws of the United States.

        3.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b), because the Defendant is a New York resident and its principal place of business is within the State and the United States District Court for the Eastern District of New York.

        4.    This Court has personal jurisdiction over the Defendant, in that it is a domestic limited liability company existing under and by virtue of the Laws of the State of New York and conducts significant business here, and in that the acts of which the Defendant stands accused were undertaken in this State and Federal Judicial District.



FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUN - 4 2015 ★



BROOKLYN OFFICE

## THE PLAINTIFF

5.    Plaintiff is a North Carolina Limited Liability Company having its principal place of business in Pineville, North Carolina.

## THE DEFENDANT

6.    Upon information and belief and at all times hereinafter the Defendant is a domestic limited liability company existing under and by virtue of the Laws of the State of New York. Defendant who along with its agents, servants and/or employees operated a karaoke and disc jockey service in the County of Nassau under the trade name "Partyokee Guys". Upon information and belief Defendant its agents, servants and/or employees currently provide or during the several months have provided karaoke entertainment at eating and drinking establishments.

## BACKGROUND FACTS

7.    Karaoke is a popular form of participatory entertainment commonly found in bars and restaurants and other types of venues throughout the United States.

8.    The basic premise of a karaoke show is that the venue hosting the show provides patrons with access to a sound system and specially prepared karaoke accompaniment tracks, so that individual patrons may perform for the crowd.

9.    Generally, a "karaoke accompaniment track" is a re-recorded version of a popular song without the lead vocals in a specialized format that includes a graphical component containing a lyric display, cueing information, and other information. The graphical component is synchronized to the music and is displayed to the patron who is performing and, typically, to the crowd as well.

10.    Venues that offer karaoke entertainment do so primarily as a free service, but with the commercial purpose of enticing patrons to come to their establishments and purchase food and beverages.

11.    The purchase and consumption of alcoholic beverages in connection with karaoke shows is particularly encouraged to enable patrons to overcome inhibitions against singing in public.

12.   Plaintiff is the owner of SOUND CHOICE, a well-known and leading brand of karaoke accompaniment tracks that is particularly well known to commercial karaoke operations including bars, restaurants, and other venues as described above.

13.   Plaintiff has succeeded Slep-Tone Entertainment Corporation ("Slep-Tone"), by assignment, in all interest in the SOUND CHOICE brand.

14.   Over the course of nearly three decades in business, Slep-Tone re-recorded and released in excess of 16,500 SOUND CHOICE-branded popular songs on special compact discs known as CD+G ("compact disc plus graphics") discs and, more recently, a subset of that catalog in another common karaoke format, MP3+G ("MP3 plus graphics").

15.   SOUND CHOICE-branded karaoke tracks are wildly popular among karaoke entertainment providers, patrons, and home consumers. According to some estimates, more than half of all accompaniment tracks played at karaoke shows in the United States originated from Slep-Tone's recordings.

16.   The popularity of SOUND CHOICE karaoke tracks derives from the market's perception that the recordings are usually the most faithful to the sound of the original recording artist, a characteristic highly valued by karaoke singers.

17.   SOUND CHOICE karaoke tracks are also perceived by the market as providing highly accurate singing cues as part of the video display, a characteristic that is also highly valued by karaoke singers.

18.   Slep-Tone and its successor PEP have released their karaoke tracks for commercial users only on compact discs[1] and not on any other form of carrier (such as computer hard drives or through internet downloads).

---

[1] In the beginning, Slep-Tone released its karaoke tracks on cassette tapes as well, but that technology was focused on the home consumer and has since become fully obsolete.

19.     Over time, however, it has become technologically possible to create karaoke accompaniment tracks, using the SOUND CHOICE CD-based tracks as a template, for storage on alternative media, such as computer hard drives.

20.     In most cases, the creation of such non-original tracks results in an imitation of a SOUND CHOICE track, which imitation is inferior to the original because of digital compression of the data as the format is converted from native CD+G audio and graphics to compressed audio and graphics.

21.     In a typical bar or restaurant environment, patrons are often unable to distinguish the imitation from an original, provided that the compression is not too aggressive, because the goal is to produce an acceptable digital substitute.

22.     The process outlined above is known as "media-shifting," because the information is being copied or shifted from one medium to another, and "format-shifting," because the information is being copied or shifted from one format to another.

23.     Media-shifting and format-shifting are undertaken for a number of purposes, some reasonable and others illicit.

24.     Users of karaoke accompaniment tracks usually find that the use of media-shifted tracks provides them with greater ease of use of the content, which can be stored on a hard drive and accessed quickly without having to insert discs into a player, and can protect the user's discs from excessive wear, damage, loss, or theft.

25.     Prior to 2007, Slep-Tone prohibited media-shifting and format-shifting of its products entirely, and its products carried warnings against the unauthorized duplication that media-shifting and format-shifting require.

26.     In order to enable legitimate owners of original discs the convenience of format-shifting and media-shifting, starting in 2007, Slep-Tone instituted a policy—which Plaintiff has continued—whereby legitimate owners could gain permission for media-shifting and format-shifting.

27. That policy requires disc owners to notify Slep-Tone of their intent to media-shift, or that they have completed a media-shift.

28. That policy also requires disc owners to maintain a condition known as "1-to-1 correspondence" between the discs they own and the media (such as hard drives) to which they media-shift.

29. For example, a disc owner who wants to have two hard drives with the same media-shifted content, the disc owner must own two original discs representing that content.

30. The policy also requires disc owners to undergo an audit of their holdings to verify 1-to-1 correspondence and the integrity of the media-shifted tracks.

31. The policy also requires disc owners to maintain ownership and possession of the discs and to put discs from which content has been media-shifted "on the shelf," i.e., out of use of any type while the content is media-shifted.

32. Unfortunately, easy electronic duplication of media-shifted tracks has resulted in the widespread distribution of media-shifted karaoke tracks unaccompanied by the ownership of any discs at all.

33. This distribution allows karaoke accompaniment track users to gain the benefit of what appear to be Slep-Tone karaoke tracks without paying for original discs.

34. Karaoke accompaniment track users have used the available technology to place the duplicated contents of one purchased disc on two or more computer systems for simultaneous use; to place the duplicated contents of their patrons' discs on their own computer hard drives at a show; to "swap" song files with other users; to obtain and share karaoke tracks via file-sharing sites and torrents; to purchase computer hard drives that were pre-loaded with duplicates of karaoke tracks; and to sell any original media they might have owned in the secondary market once they have media-shifted.

35. None of these activities are conducted with Plaintiff's authorization, and none of these activities are accompanied by any sort of payment to Plaintiff.

36.     Instead, these activities have driven the demand for original discs down to uneconomically feasible levels, because it has become relatively easy to obtain illicitly, for free or at a nominal cost, products that if legitimate would cost tens of thousands of dollars when purchased at retail.

## THE RIGHTS OF THE PLAINTIFF

37.     Plaintiff is the owner of U.S. Trademark Registration No. 1,923,448 for the trademark SOUND CHOICE, for "pre-recorded magnetic audio cassette tapes and compact discs containing musical compositions and compact discs containing video related to musical compositions."

38.     Plaintiff is the owner of U.S. Trademark Registration No. 4,099,045 for the service mark SOUND CHOICE, for "conducting entertainment exhibitions in the nature of karaoke shows."

39.     Plaintiff is the owner of U.S. Trademark Registrations Nos. 2,000,725 (for "pre-recorded magnetic audio cassette tapes and compact discs containing musical compositions and compact discs containing video related to musical compositions") and 4,099,052 (for "conducting entertainment exhibitions in the nature of karaoke shows"), both for the display trademark as follows:



40.     Plaintiff and its predecessor have, for the entire time their marks ("the Sound Choice Marks") have been federally registered, provided the public, including the Defendants, with notice of those federal registrations through the consistent display of the symbol ® with its marks as used.

41.     Plaintiff is also the owner, by virtue of the same assignment as above, of distinctive and protectable trade dress associated with its graphical displays ("the Trade Dress").  This

distinctive and protectable trade dress includes, at a minimum, (a) the use of a particular typeface, style, and visual arrangement in displaying the lyrics; (b) the Sound Choice Marks; and (c) the use of particular styles in displaying entry cues for singers, namely a series of vanishing rectangles to indicate the cue.

42.     Slep-Tone and Plaintiff have used the Trade Dress continuously and substantially exclusively for a period of decades.

43.     The individual and collected elements of the Trade Dress have acquired secondary meaning as an indicator of Plaintiff as a source, effectively functioning as a visual trademark.

44.     The Trade Dress serves to distinguish Plaintiff's tracks from the tracks of its competitors, such that persons who are even minimally frequent consumers of karaoke entertainment services such as those provided by the Defendants are capable of identifying a particular karaoke track as originating with Plaintiff simply by examining the Trade Dress or any significant portion thereof, whether or not the Sound Choice Marks are also displayed.

45.     The elements of the Trade Dress represent specific design choices by Slep-Tone and Plaintiff; they are but three of many ways to convey the information necessary to permit a karaoke singer to be appropriately supported in his or her performance.

46.     No competitor of Plaintiff is required to use any element of the Trade Dress to accomplish the lyric cueing, and indeed all of the Plaintiff's known competitors are known to use other trade dress in accomplishing the lyric cueing.

47.     Principally, the Sound Choice Marks and the Trade Dress are indicators of PEP as the origin of karaoke accompaniment tracks, meaning that they indicate that the physical goods to which they are applied were made and distributed by PEP or at its direction and under its control.

### ACTIVITIES OF THE NON-PARTY BARS AND RESTAURANTS

48.     Various non-party bars and restaurants have hired Crazy for Karaoke to provide commercial karaoke services at their establishments.

49.     Plaintiff reserves the right to amend this complaint to add these bars and restaurants

in a manner consistent with the Federal Rules of Civil Procedure.

50. The non-party bars and restaurants each have the ability to control whether or not Defendant engages in trademark infringement and unfair competition when providing karaoke services at their establishments.

51. The non-party bars and restaurants have received a financial benefit from the provision of infringing karaoke services at their establishments by Defendant, through the attraction of paying patrons to their establishments.

52. As such, each of the non-party bars and restaurants are operating in actual or apparent partnership with Defendant, in a symbiotic relationship from which both benefit.

53. Each of the non-party bars and restaurants are liable for the acts of trademark infringement directly engaged in by Defendant on their respective premises or for their benefit.

## DAMAGES

54. Defendant's unauthorized use of the Plaintiff's trademarks has damaged Plaintiff.

55. Defendant damaged Plaintiff in an amount to be proven at trial but not less than $25,000 for each karaoke system they own or operate and which contains karaoke tracks that infringe the Sound Choice Marks as detailed above, based upon their foregone purchases of original media.

56. Defendant has also enjoyed years of revenues attributable in substantial part to its use of counterfeit SOUND CHOICE-branded karaoke tracks to provide karaoke services for money.

57. Defendant's illicit activities have also allowed it to compete unfairly against Plaintiff's legitimate customers by lowering its cost of doing business through piracy of the music materials it uses.

58. Those illicit activities exerted illegitimate and unfair pressure upon the market for karaoke services in the areas in which the Defendant operates by helping to crowd higher-cost but legitimate operators out of the market.

59. Defendant's acts deprived Plaintiff of revenue by discouraging legitimate operators

from investing in legitimate SOUND CHOICE-branded products.

**FIRST CLAIM FOR RELIEF**
*TRADEMARK AND SC TRADE DRESS INFRINGEMENT UNDER 15 U.S.C. §1114*
60.     Plaintiff repeats and incorporates by reference herein its allegations contained in foregoing paragraphs of this Complaint.

61.     Defendant used and knowingly directly benefited from the use of a reproduction, counterfeit, or copy of the Sound Choice Marks or the SC Trade Dress in connection with the provision of services including karaoke services, by manufacturing or acquiring the reproduction, counterfeit, or copy of the Sound Choice Marks or the SC Trade Dress, and by displaying the reproduction, counterfeit, or copy of the Sound Choice Marks or the SC Trade Dress during the provision of those services.

62.     Use of the Sound Choice Marks and the SC Trade Dress by Defendant were "in commerce" within the meaning of the Trademark Act of 1946 as amended.

63.     Plaintiff did not license Defendant to manufacture or acquire reproductions, counterfeits, or copies of, or to use, the Sound Choice Marks or the SC Trade Dress in connection with the provision of their services.

64.     Use of the Sound Choice Marks and the SC Trade Dress by Defendant in this manner is likely to cause confusion, or to cause mistake, or to deceive their customers and patrons into believing that their services are being provided with the authorization of Plaintiff and that their music libraries contain bona fide Sound Choice accompaniment tracks.

65.     On information and belief, the acts of Defendant were willful, knowing, and intentional.

66.     Plaintiff has been damaged by these infringing activities.

67.     Unless enjoined by the Court, the infringing activities as described above will continue unabated and will continue to cause harm to Plaintiff.

## SECOND CLAIM FOR RELIEF
### *TRADEMARK COUNTERFEITING UNDER 15 U.S.C. § 1114*

68.     Plaintiff repeats and incorporates by reference herein its allegations contained in foregoing paragraphs of this Complaint.

69.     Defendant without authorization from Plaintiff, has used spurious designations that are identical with, or substantially indistinguishable from, the Plaintiff's Marks in interstate commerce through its offering karaoke services.

70.     The foregoing acts of Defendant are intended to cause, have caused, and are likely to continue to cause confusion or mistake, or to deceive Defendant's customers into believing that Defendant's services are and were being provided with the authorization of Plaintiff.

71.     Defendant's acts as aforesaid constitute trademark counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114.

## THIRD CLAIM FOR RELIEF
### *UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a)*

72.     Plaintiff repeats and incorporates by reference herein its allegations contained in foregoing paragraphs of this Complaint.

73.     On each occasion Defendant caused or permitted an unauthorized counterfeit duplicate of a Plaintiff accompaniment track to be played during a karaoke show at a given establishment, the Sound Choice Marks and the SC Trade Dress were displayed in connection with the Defendant's karaoke services.

74.     The display of the Sound Choice Marks and the SC Trade Dress is likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that Plaintiff manufactured the karaoke accompaniment tracks in use at the establishment or otherwise sponsored or approved the Defendant's services and commercial activities.

75.     The display of the Sound Choice Marks and the SC Trade Dress is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present

are likely to be deceived into believing, falsely, that the works being performed were sold by Plaintiff and purchased or otherwise licensed by Defendant.

76.     Defendant's use of Plaintiff's marks and SC Trade Dress in this fashion or in a more appropriate fashion would have inured to the benefit of PEP if Defendant had legitimately acquired bona fide original media instead of counterfeiting them or acquiring counterfeit copies, in that PEP would have received revenue from such sales.

77.     Because Plaintiff has been denied this revenue, it has been damaged by Defendant's uses.

78.     On each occasion when Defendant caused or permitted an accompaniment track pirated from a manufacturer other than Plaintiff to be played during a karaoke show, the words, names, and symbols of the other manufacturer were displayed in connection with the Defendant's karaoke services.

79.     Upon information and belief, Defendant's use of those words, names, and symbols falsely designates the other manufacturer as the origin of the pirated track, when in fact Defendant or an upstream but unauthorized provider of the track was the origin of that track.

80.     The display of these false designations of origin is likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the pirated tracks are legitimate, authorized, and authentic materials that Defendant acquired in a legitimate manner.

81.     The display of the false designations of origin is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the works being performed were sold by those manufacturers and purchased by Defendant.

82.     Defendant's use of the false designations of origin in this fashion damages Plaintiff by enabling Defendant to provide or obtain karaoke services at a lower cost than persons

who acquire those materials legitimately, including Plaintiff's legitimate customers, can provide or obtain them.

83.     The consequential denial of revenue from a legitimate market for Plaintiff's customers' services prevents Plaintiff's customers from making purchases of material from Plaintiff and is thus a denial of revenue to Plaintiff.

84.     Because Plaintiff has been denied this revenue, it has been damaged by Defendant's false designations of origin relating to other manufacturers.

85.     Unless enjoined by the Court, the Defendant's unfair competition activities as described above will continue unabated and will continue to cause harm to Plaintiff.

### FORTH CLAIM FOR RELIEF
#### *UNFAIR AND DECEPTIVE TRADE PRACTICE UNDER NEW YORK GENERAL BUSINESS LAW § 349*

86.     Plaintiff repeats and incorporates by reference herein its allegations contained in foregoing paragraphs of this Complaint.

87.     On each occasion when Defendant caused a Sound Choice recording to be played during a karaoke show, the Defendant displayed the Sound Choice Marks in connection with the Defendant's karaoke services.

88.     The display of the Sound Choice Marks is likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the Plaintiff sponsored or approved the Defendant's services and commercial activities.

89.     The display of the Sound Choice Marks is also likely to cause confusion, or to cause mistake, or to deceive those present during the display, in that those present are likely to be deceived into believing, falsely, that the works being performed were sold by Plaintiff or its licensee(s) and legally purchased by the Defendant.

90.     Defendant's conduct constitutes unfair and deceptive acts or practices in violation of N.Y.G.B.L. § 349.

**FIFTH CLAIM FOR RELIEF**
*UNFAIR COMPETITION UNDER THE COMMON LAW OF NEW YORK*

91.     This claim arises under the common law of the State of New York relating to trademark infringement and unfair competition. This Court has jurisdiction over the subject matter of this claim pursuant to the provisions of 28 U.S.C. § 1338(b), this being a claim of unfair competition joined with a substantial and related claim under the Trademark Laws of the United States, and pursuant to 28 U.S.C. § 1367 under the doctrine of supplemental jurisdiction. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

92.     Plaintiff repeats and incorporates by reference herein its allegations contained in foregoing paragraphs of this Complaint.

93.     As fully set forth above, the Sound Choice Marks are indicative of origin, relationship, sponsorship, and/or association with Plaintiffs. The purchasing public is likely to attribute Defendant's use of the Sound Choice Marks as a source of authorization, endorsement, and/or sponsorship of Defendant's services and use of these marks.

94.     Upon information and belief, Defendant has intentionally appropriated the Sound Choice Marks with the intent of causing confusion, mistake, and deception as to their relationship with PEP and with the intent to palm themselves off as being authorized by, sponsored by, approved, by or licensed by PEP and, as such Defendant has committed trademark infringement and unfair competition under the common law of this state.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against the Defendant, and that the Court:

A.       Find that Defendant committed acts of infringement, including but not limited to counterfeiting, of the federally registered Sound Choice Marks and of the SC Trade Dress in violation of 15 U.S.C. § 1114;

B.       Award Plaintiff damages for trademark infringement based upon Plaintiff's actual damages and Defendant's profits or statutory damages as elected by Plaintiff, to the fullest extent allowed by law, and not less than TWO MILLION DOLLARS ($2,000,000) per counterfeit mark under 15 U.S.C. §1117(c)(2) for trademark infringement;

C.       Find that Defendant engaged in unfair competition detrimental to Plaintiff in violation of 15 U.S.C. § 1125(a);

D.       Enter judgment against Defendant and in favor of Plaintiff on all applicable counts;

E.       Find the Defendant's activities were in all respects conducted willfully and for profit;

F.       Award to Plaintiff Defendant's profits and the damages sustained by Plaintiff because of the Defendant's acts of unfair competition under 15 U.S.C. § 1125(a), and in any event in an amount not less than $25,000 for each karaoke system operated by Defendant, and not less than $50,000 for each establishment in which the infringement occurred;

G.       Award to Plaintiff treble, punitive, or otherwise enhanced damages, as available, for Defendant's acts of willful infringement;

H.       Order all computer disks, drives, or other media belonging to Defendant, which media contain counterfeits of Sound Choice Marks, or of marks belonging to other manufacturers, to be delivered up for destruction;

I.       Grant Plaintiff preliminary and permanent injunctive relief against further infringement of the Sound Choice Marks and SC Trade Dress by Defendant;

J.       Grant Plaintiff preliminary and permanent injunctive relief against further false designations of origin by Defendant with respect to words, names, and symbols associated with other manufacturers;

K.       Award Plaintiff its costs suit and attorney fees, to the extent not awarded above; and

L.    Grant Plaintiff such other and further relief as the may deem justice, proper and equitable.

Dated: New York, New York
    May 27, 2015

Respectfully submitted,

POWELL & ROMAN, LLC

By:

Robert    G.    Androsiglio
(RGA4354)
Attorneys for Plaintiff
30 Wall Street, 8th Floor
New York, New York 10005
(212) 742-0001
File No.: 910.4146

Case No.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT
PHOENIX ENTERTAINMENT PARTNERS, LLC.,

              Plaintiff,

    - against -

PARTYOKEE ENTERTAINMENT, LLC.
D/B/A THE PARTYOKEE GUYS.

              Defendants.

# SUMMONS & COMPLAINT

**POWELL & ROMAN, LLC**
Attorneys for *Plaintiff*
**30 Wall Street**
**8th Floor**
**New York, New York 10005-1313**
**(212) 742-0001**

*To:*

*Attorney(s) for*

*Service of a copy of the within is hereby admitted.*
*Dated:*

--------------------------------------
          *Attorney(s) for*

*PLEASE TAKE NOTICE*
    *[ ]*      *that the within is a (certified) true copy of a  entered in the office of the clerk of the within*
              *named Court on 20*

    *[ ]  that an Order of which the within is a true copy will be presented for settlement to the Hon.*
          *one of the judges of the within named Court, at  on    , 20  , at  .m.*

*Dated:*

                    **POWELL & ROMAN, LLC**
                    Attorneys for *Plaintiff*
                    **30 Wall Street - 8th Floor**
                    **New York, New York 10005-1313**
                    **(212) 742-0001**

To:
Attorney(s) for